FILED
CLERK, U.S. DISTRICT COURT

3/26/25

CENTRAL DISTRICT OF CALIFORNIA
BY: _____V. Figueroa_____ DEPUTY

GARY S. HANN, pro se
Plaintiff
yragnnah@gmail.com
P.O. Box 711
Cathedral City, CA 92235-0711
734-480-4140

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| GARY S. HANN,<br><br>      PLAINTIFF,<br><br>      VS.<br><br>Christopher Compton and Donna Compton,<br>      Defendants. | Case No. 5:25-cv-00165-FMO-SHKx<br><br>JUDGE: HON. FERNANDO M. OLGUIN<br><br>MAGISTRATE JUDGE: SHASHI H. KEWALRAMANI<br><br>FIRST AMENDED COMPLAINT FOR SIGNIFICANT AND ONGOING DAMAGES FROM NON-PRIVILEGED DEFAMATION PER SE AND PER QUOD, AND FOR PERSONAL INJURY FROM IIED, BY DEFENDANTS AGAINST PLAINTIFF HANN<br><br>JURY TRIAL DEMANDED |

TO THE HONORABLE FERNANDO M. OLGUIN, UNITED STATES DISTRICT

JUDGE, AND ALL INTERESTED PARTIES:

1

1

2

3    Now comes 100% Disabled Retiree and Plaintiff Gary S. Hann

4    ("Hann"), who demands a jury trial and who deposes and says as

5    follows:

6

7                        **JURISDICTIONAL STATEMENT**

8    1.    Diversity jurisdiction in federal court under 28 U.S.C.

9    Section 1332 exists because its two elements have been met:   (1)

10   the amount in controversy far exceeds $75,000, and (2) Plaintiff's

11   more than a decade of citizenship in Riverside County, California

12   (addressed in Venue, post), differs from Defendants; both Dane

13   Christopher Compton, and his wife Donna Compton, list their address

14   in Dallas, Texas.

15

16

17                             **PREAMBLE**

18   2.   Plaintiff Gary S. Hann ("Hann") is a 100% disabled retiree

19   and who has been frequently deprecated by the vicious and

20   unwarranted actions of Defendants.

21   3.    Hann brings this action with respect and deference, but

22   simply cannot comprehend the violations of long settled law and

23   the personal trauma and reputational harm intentionally caused him

24   by Defendants.  Hann brings this action without improper purpose,

25   in good faith and in sincere belief that the claims made are

26

27

28

2

correct, meritorious and predicated on a firm legal foundation, and therefore deserving of full consideration.

4.    Hann further avers that statements of fact herein are true and accurate to the best of his information, knowledge and belief, and that he is fully competent to testify thereto.

5.    Hann respectfully requests that this Honorable Court not reject this matter for technical or procedural reasons, but rather that this Court either correct such deficiencies sua sponte, or permit Hann to make such minor technical or procedural changes as may be found from time to time. *Haines v. Kerner*, 404 US 519, 520, 92 S.Ct. 594, 596 (1972).

6.    Hann additionally respectfully reminds the Court, and requests, that he be given any reasonable latitude in accordance with and as has been mandated by federal decisions and practice. *Castro v. US*, US No. 02-6683, 124 S.Ct. 786 (2003); *Boswell v. Mayer*, 169 F.3d 384 (6th Cir. 1999), *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991).

**VENUE**

7.    Venue is appropriately in this Court pursuant to 28 U.S.C. 1391(b)(1) and (2), because Plaintiff Hann resides in Riverside County, CA, and the physical harm from defamation per se and per

quod, and intentional and malicious physical damage from infliction of emotional distress occurred here.

**THE PARTIES**

8.   Plaintiff Hann is a long time tournament bridge player, and has made friends and compatriots in the duplicate bridge playing community across the USA, and to a certain extent, around the globe.  He has been honored by being elected Chairman of the prestigious American Contract Bridge League ("ACBL") Board of Governors, for two terms from 1991 to 1995, and subsequently by acclimation for another two years, to that Group's Vice-Chairmanship.  Edgar Kaplan and Alfred Sheinwold, both community icons, praised Hann's leadership and accomplishments.

9.   It is nearly fully acknowledged by the bridge playing community, that Hann and the team he captained at the time, were blatantly cheated out of the most prestigious championship of that era, the 1979 Men's Board-A-Match ACBL National Title, held in Norfolk, VA.

10.   Hann has been a member of "Bridge Winners" ("BW"), an independent and privately financed 20,000 +/- person USA-centric community of those, including many spread around the globe, who have a passionate desire to discuss, or respectfully debate, topics directly related to playing the card game-sport of bridge.  Bridge

Winners ("BW") has community guidelines, which all participants

agree to follow, among which are:

Absolutely no "*ad hominem*" attacks.

Forwarding a different tone from the actual posted topic of

conversation (going "off-topic").

**FURTHER DIRECTIVES ON BRIDGEWINNERS:**

"Instead, provide reasoned counter-arguments that improve the
conversation".

### "ALWAYS BE CIVIL"

"Nothing sabotages a healthy conversation like rudeness:

"Be civil. Don't post anything that a reasonable person would
consider offensive, abusive, or hate speech.

"Respect each other. Don't **harass anyone**, impersonate people,

or **expose others' private information**".

### DANE CHRISTOPHER COMPTON AND DONNA COMPTON

11.    Together with Donna Compton practicing as Compton &

Compton PLLC, have represented convicted bridge cheaters before

the ACBL to get them lighter sentences or even completely off from

the well documented and thoroughly charges, often using highly

non-traditional and un-lawyer like methods not available to the

average bridge player.

5

12.    From the Compton's well publicized web site: "DANE CHRISTOPHER COMPTON 4744 Alta Vista Circle Dallas, Texas 75229 Home 214 373 7055 Cell 972 333 9214 Fax 214 373 0370 E-mail: chriscompton@mindspring.com  Professional  Experience:  Bridge Academy of North Dallas, Full time Bridge Professional and Club Owner operator, 2007 to present".

13.    Dane Christopher Compton has been irate at Plaintiff beginning in the early 1980s when Hann rejected Compton's impelling, unmistakable sexual entreaties in a private hotel room, more so when Hann refused to vote for Compton as essentially a "carpet bagger" candidate for the ACBL's Board of Governors Chairmanship, and most of all, for Hann's 2015 exposure of Compton's close buddy "MP" for "MP's" flagrant cheating against elderly Florida retirees in a Florida Regional bridge tournament Swiss Team Event in 2014.  "MP" was heavily penalized at the time by a National Tournament Committee.

14.    Compton has only, and frequently, made acerbic online comments whenever and wherever Hann's name appears on the BW platform, and which are made quickly and seemingly "off the cuff", rather than being considered.  With respect to any topic addressing Hann, Compton is a proverbial "loose cannon", and frequent errors and corrections appear in his posts.

6

15.    In 2023, Compton made a stupidly and wildly untrue, libelous comment in a BW thread at the time Hann was preparing a legal action against the ACBL, and when Plaintiff Hann returned to the BW thread a few hours later to copy and save it, Compton had withdrawn the comment.

16.    Hann then actually sent a private E-mail message to Compton on that occasion, saying "nice catch, counsel"!   Had Compton not removed the said comment, he would have been included in the legal action against the ACBL.

17.    Regarding Donna Compton's commensurate liability herein – "A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

"(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

"(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action".

18.    Following are comments that in which Defendants failed to use reasonable care to determine the truth or falsity of the statement(s).

19.  Shame, mortification, or hurt feelings will give rise to actual, and possibly significant, damages.

20.  From a California Jury Instruction: Even if [name of plaintiff] has not proved any actual damages for harm to reputation or shame, mortification, or hurt feelings, the law assumes that [he/she/nonbinary pronoun] has suffered this harm. Without presenting evidence of damage, [name of plaintiff] is entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable.

**THE CONTROVERSY**

21.  On January 19, 2024, BW member Greg Gauthier of Bridge Winners (BW) posted an Article entitled "Hann v. ACBL has settled", and invited discussion directly related to that specific topic, as is the mandate from the Bridge Winner's (BW) Community Standards.

22.  From a legal prospective, public discussion of private facts is a tort cause of action.  It occurs when an action publically disseminates private or embarrassing facts about you without:

- your consent and

- a legitimate public concern for the topic.

23.   The BW Community prohibits revealing supposed criminal designations and/or activity that has no relation to bridge tournaments or to the game of bridge.

24.   Plaintiff cannot recall when anyone else was subject to such revelations, over about a dozen years of reading a significant number of Articles and Posts, perhaps 10,000 or more.

## COUNT I – DEFENDANT'S INTENTIONAL AND MALICIOUS PER SE DEFAMATION

25.   Plaintiff alleges false statements of fact, about the plaintiff, published – without privilege – to a third party, with fault or, in the case of a private plaintiff, with, at minimum, negligence, and the false statements has caused harm, the elements of a Plaintiff's defamation claims.

26.   The following defamation per se comments by Defendants are ludicrous, totally untrue, malicious and unprivileged, and show a complete disregard for the truth of the matter.

27.   As noted, on Jan. 20, 2024, member Greg Gauthier published an Article titled "Hann v. ACBL has settled", addressing a legal action in the Central District of California District Court challenging some wrongfully presented By-Laws, a Disciplinary Hearing against Hann where the Disciplinary Committee completely

9

lacked all jurisdiction, and the failure of the ACBL (American Contract Bridge League) to take any action against vile and unrepentant cheaters in a major "Men's Board-A-Match Team Event" at the 1979 ACBL Spring National Bridge Tournament.

XX.   Plaintiff Hann never commented on this Article, or defended his venerable name in the bridge community developed over 57 years, since he was tightly and honorably bound by a mutual non-disclosure agreement with prior (not present) Defendant ACBL in the Hann . ACBL Federal District Court matter.

28.   A Shawn Dressing almost immediately noted that "Thanks! *Unfortunate name to have I guess* because when I googled "Gary Hann lawsuit" I got a bunch of links to cases involving . . . and a Gary Hann suing a magician."

29.   Ms. Dressing's (from her picture) post presumptively said that the Gary Hann of bridge note, was most definitely not the Gary Hann of the Article mentioned, given her six words "*Unfortunate name to have I guess*"!

30.   It should be immediately apparent and carefully noted that the said Shawn Dressing did not say anything about an SO, or about any purported RSO "conviction", despite her apparently using the full powers of Google Search.

31.   Shortly after Shawn Dressing's post, also on Jan. 20, 2024, Dane Christopher Compton chimed: "Shawn , gary Hann is a

convicted tier two sex offender in Michigan. it's an easily accessible public record".

32.  Such comment is decidedly off-topic on the BW site and is thus clearly and unmistakably in violation of the BW Community Guidelines.

33.  Such comment has a number of typos, including failures to simply capitalize where it is required, and flippant stop gap sentence structure, unlike licensed attorneys in general.

34.   The term "Tier-2" is an obvious and unmistakably exclusive reference to those who are RSOs.

35.   Poster Shawn Demming, above, did not make any such statement, despite having Googled Plaintiff.

36.  The reason Demming did not mention RSO status, *is because Hann is absolutely not an RSO*, and it surely never appeared on her screen, a message that Defendants might ought to have considered and is actually required by their license to practice law.

37.   Defendant Compton's *heinously wrongful and untrue statement as to Hann being an RSO is demonstrably and completely untrue*, and a heinous and unspeakably monstrous per se slander.

38.   Calling someone an RSO is universally agreed and understood to be the most vile, most denigrating, most despicably horrific designation generally possible in today's societal milieu.

11

39.    RSOs are universally hated, despised, and subject to vicious taunting, unprovoked attacks, and massive and continuing humiliation and vilification.   Some have even been murdered by self styled vigilantes.

40.    Compton's declaration that such purported but wrongful RSO status was "an easily accessible public record" was totally and blatantly false, as inferred from Demming's earlier post, who did not mention such because it wasn't there.

41.    Intriguingly, as a licensed member of the bar, Compton could have followed his own simple advice and researched in a hot second such an "easily accessible public record", and would have found none regarding RSO.

42.    Compton's obligation to the BW Community, to Plaintiff Hann, to the public, and to the bar, is well memorialized.

43.    Defendant Compton's proactive non-use of a brief moment of time to run a quick check, and thus avoiding violating all form of human decency, and has greatly and continuously harmed Hann.

44.    Further, the Michigan Supreme Court has opined and declared that Plaintiff Hann is "not guilty".

45.    Plaintiff seeks a minimum of $300,000 for these disturbing and disgusting defamations per se from Defendants.

12

**COUNT II — DEFENDANT'S DEFAMATION PER QUOD**

46.  If the false statement at issue does not fall within the definition of "defamation per se" within the relevant jurisdiction, it will be considered "defamation per quod." A statement is generally "defamation per quod" if its harmful nature can only be understood by reference to, and consideration of, extrinsic facts to explain its defamatory meaning. Often, defamation per quod is referred to as defamation by the use of interpretation or innuendo.

47.  On Jan. 20, 2024, Compton wrote: "my understanding is that Gary claimed the discipline inappropriate because he is no longer a member of the League. he attended the Advisory Council meeting as a Lifetime member of the Advisory Council —- as an ex ACBL President".

48.  On Jan. 20, 2024, Compton almost immediately posted: "I correct my post. gary was never an ACBL President. He was Chairman of the ACBL Board of Governors predecessor to the Advisory Council. ((Typo, corrected, thanks!)" . . . NOTE ON POST: "Chris Compton edited this comment Jan. 21".

49.  The failure to capitalize "Gary" was an overt statement as to Defendant Compton's personal opinion of Plaintiff, and denigrating by a licensed member of the bar.

13

50.  Richard Fleet then wrote immediately thereafter, on Jan. 21, 2024: "I'd correct it again if I were you, Chris."

51.  Fleet conveyed to Plaintiff that he had yet again noted a typo or typos, leading Defendant to make one more of many corrections, with wanton initial disregard for accuracy, a trait that most all licensed counsel possess, cherish and adhere to assiduously.

52.  On Jan 21, 2024 by Dane Christopher Compton: "deleted".

53.  Again, one can surmise that, per usual, he posted either a wrongful, or defamatory, or both comment, but apparently quickly realized his misstep, as others were want to say in response to most of what Compton posted.

54.  Gregory Gauthier wrote, on Jan. 21, 2024:  "The US Chess Federation recently updated its Safe Play Policy to forbid registered sex offenders to "be present or participate in events where minors will be present or registered to compete". https://new.uschess.org/sites/default/files/media/documents/us-chess-safe-play-guidelines.pdf"

55.   On Jan. 21, 2024, Dane Christopher Compton wrote in response: 'Gregory, thanks for the post and the link'.

56.  That enthusiastically supportive comment by Compton was clearly a direct, deprecating reference to Plaintiff, and of

14

course, had absolutely nothing to do with "advancing the conversation" or with the game of bridge in general.

57.  Defendant Compton was in fact making an obvious reference to Plaintiff Hann and his supposed unsuitability to be anywhere, as crowded as it might be, due to Compton's woefully erroneous and completely untrue opinion that Hann was an RSO.

58.  In Gauthier's post noted directly above, it does use the explicit term, of which Compton obviously heartedly approved, without explaining or "advancing the conversation", a requirement of the BW site.

59.  At some points, including this chronological account, the topic moved to Hann's Team's second place finish in the aforementioned 1979 Men's Board-A-Match National Championship, finishing a hair's breadth behind a pair that was known to be cheating throughout, as highly respected world class expert Kit Woolsey stated:

"Jeff, Hann's team came in second in the BAM event in Norfolk.

"The team which came in first had a pair which was cheating during that event.

"These are 100% facts.

"From these you can draw your own conclusions. But make sure you know what the facts are first".

60.   Another commenter, a Jim Fox, mentioned regarding a post that: "Jeff, you obviously need to research the Norfolk situation before you ignorantly opine about it again. :)"

61.   Compton's immediately follow-up had nothing whatever to do with what Mr. Fox had just stated:

62.   On Jan. 21, 2024, Compton wrote: "Jim, just because Mr. played against a pair that cheated does not mean that he was cheated or that he would have won the event had the pair not played. These are just the beginning of problems related to "vacation with replacement" and why "vacation without replacement is somewhat the norm in various forms of competition around the world" .

63.   Note that Compton did not insert Hann's name after the "Mr." in the opening words of his post, another typical faux pas.

64.   There, Compton was actively advocating that Hann's second place team in arguably the ACBL's toughest event, should not be elevated to first place because the winners cheated throughout.

65.   Anything that might well bring deserved honor to Hann's long career in the bridge player's community is seemingly automatically opposed by Defendant Compton, despite that moving second place up to the winner's podium is quite traditional and accepted in many competitions around the globe.

16

66.  On Jan. 21, 2024, Compton stated: "Gary Hann is perhaps the most unsympathetic plaintiff i have ever seen in my legal career".

67.  This extremely generalized ad hominem attack was both absolutely prohibited by BW Guidelines, but also untrue in that "sympathy", or lack thereof, regarding lawsuit parties, has no place in the courts or in the legal process.

68.  Additionally, the term "sympathy", or more specifically, "most unsympathetic plaintiff" is so broad and undefinable, as to have little practical meaning absent extensive research and categorization.

69.  Thus, the only point of Compton's comments was to cause as extensive harm and grief to Hann as Compton could muster, having no place in a polite debate format in "provid[ing] reasoned counter-arguments that improve the conversation", per the BW Guidelines.

70.  Chip Boyle wrote in response, on Jan. 25, 2025: "I would add that Gary Hann, the individual, "has nothing to do with the merits of the underlying dispute".
"Any lawyer [note – such as Compton] who has walked through a courtroom door knows that feelings of sympathy or lack thereof are To be hung on the coat rack in the hallway.  Or, so says the standard jury instruction".

17

"Just the facts, ma'am".

71.    On Jan. 22, 2024, Ken Rhodes posted: "[re National Championship] It was, indeed, a big deal. And Gary Hann was not the only injured party. On that team, David Sacks and Ron Feldman were two other excellent players who recorded multiple runner-up finishes in NABC+ events but never a win. So Gary was not the only person disadvantaged by the way it was handled.

72.    On Jan. 22, 2024, Compton responded forthwith: "Almost certainly, it was. not a complete round robin. Way too many teams".

73.    Again, Plaintiff raises note of the highly unusual punctuation and utter lack of rudimentary sentence structure.

74.    Further, the event was undoubtedly a complete round-robin, Hann being there, in that all teams in the "Finals" met every other finalist team, for three boards (hands) of duplicate contract bridge per team.

75.    There were 2 "Sections" of 10 teams each in the Finals. 30 Boards were played in the afternoon against the other entire "Section", totaling 30 Boards, and 27 Boards were played in the evening against the other 9 teams in our 10-team Section.

76.    Thus, Defendant's statement was demonstrably, completely untrue.

77.    The above defamation per quod declarations by Defendant Compton show a wanton disregard of the BW Guidelines that are

18

generally rigidly enforced, and an un-lawyerlike single purpose mindset to attack, degrade and debase Plaintiff at every possible opportunity.

78.   Defendants made a total of 8 postings on the Article, out of 180 total postings in the Article, not a single one of which arguably "forwarded the discussion".

79.   For these outrageous, unresearched, unreasoned, and unapologetic defamations by Compton against Plaintiff, Hann seeks a minimum of at least $125,000, as determined by a competently selected jury of peers.

## COUNT III – PHYSICAL INJURY FROM INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80.   The above comments have deeply physically damaged Plaintiff Hann's body and psyche in general, and severely aggravated his already 100% disability, thus causing him enduring physical suffering and injury.

81.   Plaintiff's disability medical history is lengthy and became noticeably exacerbated on and after Defendant's outrageous and never ending defamations, causing lifetime alteration of Hann's physical well-being and enjoyment of life.

82.   Hedonic damages tort is well recognized and enforced by numerous courts, as a distinct component of non-economic damages, of which Compton has inflicted massive and ongoing harm on Hann.

83.   For Hedonic damages regarding loss of future enjoyment of Hann's life, Plaintiff seeks a minimum of $300,000 for his remaining lifetime physical damages due to Defendant's intentional infliction of emotional distress.

## RELIEF REQUESTED

84. Plaintiff Hann seeks $300,000 or greater for the Compton's outrageous, blatant per se defamation, $125,000 or greater for Defendant's knowingly wrongful defamations per quod, and a minimum of $300,000 for willfully malicious causation of personal injury from their intentional infliction of emotional distress upon Hann, all as determined by a properly constituted jury.

Dated this 13th of March, 2025.

*//Gary S. Hann*

_____

Gary S. Hann, Plaintiff