GARY S. HANN, pro se
Plaintiff
yragnnah@gmail.com
P.O. Box 711
Cathedral City, CA 92235-0711
734-480-4140

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| GARY S. HANN,<br><br>    PLAINTIFF,<br><br>    VS.<br><br>Christopher Compton and Donna Compton,<br>    Defendants. | Case No. 5:25-cv-00165-FMO-SHKx<br><br>JUDGE: HON. FERNANDO M. OLGUIN<br><br>MAGISTRATE JUDGE: SHASHI H. KEWALRAMANI<br><br>EX-PARTE DECLARATION AND MOTION FOR ALTERNATIVE SERVICE AND FOR EXTENSION OF TIME, WITH POINTS AND AUTHORITIES IN SUPPORT.<br><br>HEARING: NONE<br><br>JURY TRIAL DEMANDED |

**DECLARATION OF PLAINTIFF GARY S. HANN**

I am over the age of 18, and if my testimony is needed, I am competent to testify thereto:

1

1. Plaintiff is very aged, and has been 100% permanently disabled, as of his Physician's declaration of 2002.

2. Plaintiff Hann is a pro-se frail, nearly 76 year old gent who lives quietly in the Coachella Valley, and would find great difficulty in personally delivering documents or attending hearings in Riverside, the very much less so in massively crowded and nearly unattainable downtown Los Angeles.

3. Plaintiff's meager retirement income includes a small tract home in Michigan, the free and clear title of which has been challenged fraudulently for quiet title, requiring his complete attention since being served E-mail process in early January, 2025, taking and sapping a massive amount of his time.

4. For about 3 intensive weeks, Plaintiff was researching the numerous businesses of the two Defendants, both attorneys, in an attempt to divine their home address, for service of process pursuant to the Federal Rules, or even the apparent Texas rules.

5. For the past week, Plaintiff has compiled over 10 pages of notes on Christopher and Donna Compton, a married couple of well over 30 years, who are professional bridge tournament players, and highly qualified bridge teachers, under the umbrella of the American Contract Bridge League ("ACBL").

6. Plaintiff Gary S. Hann ("Hann"), has been a member of the American Contract Bridge League ("ACBL") for well over a half-century, first encountering Christopher Compton in the last 1970s.

7. Defendants Compton and Compton are also both attorneys, and who resided pre-COVID in North Dallas, TX, running a large bridge club, both in-person and online, to a high level of success.

8. It did appear at that time, that there was a business office for one or both of Defendants, in Oklahoma; Plaintiff therefore has researched that state, though finding nothing other than that single point of reference.

9. Since filing his Complaint, Plaintiff has expended about 25-30 hours of time looking, and looking again, at any place that might have revealed a home address for either or both Defendants.

10. During this address/contact ordeal, Plaintiff discovered multiple businesses, which had evolved since COVID to purely online activity, but with two updated, legitimate street addresses.

11. Plaintiff's research has been wide ranging, and seemingly all-encompassing, looking at such possibilities as:

The "Bridge Winners", a world-wide go-to site for good to excellent bridge players, North American based, but open to all, with many International participants. Both Defendants have fully functional E-mails there, which relay any communication to their personal E-mails.

Facebook; both Comptons Defendants have reference pages there.

3

The Bar Association web sites for TX, OK and NBB (none give home addresses, Defendants are still both licensed in TX, with E-mails listed).

Voter Rolls for TX, OK, NE (No home addresses were revealed in any state).

Linked In for Defendant Donna Compton, required Plaintiff to set up an account, which he declined to do.

12.  Searching their names online, revealing that Defendant Christopher Compton once had a personal E-mail of chriscompton@mindspring.com, which seems not to be functional currently.

13.  Additionally for Defendant Christopher Compton, the E-mail bridgeacademy@mindspring.com does not bounce back, suggesting current functionality.

14.  For Defendant Donna Compton, online entries showed that her moniker "Play Better Bridge" revealed a working E-mail: Donna@PlayBetterBridge.com.

15.  Plaintiff discovered "Bridge Academy of North Dallas", which seems to be out of date, given the apparent move from Dallas to Omaha, NE.  Plaintiff will not use any of those pre-COVID E-mails.

16.  Plaintiff located a site called "Lawyers.com", which seemed to give a reference to a street address for Defendant Donna Compton.  However, when Plaintiff looked up that address, he found

4

that the property hadn't transferred or been sold since 1999, a very long time ago, and Plaintiff discounts that address found nowhere else, as one or both Defendants would likely have purchased a property in Omaha, NE, rather than rented or shared.

17.    There were numerous online references to the Compton & Compton Law Offices, at 1422 S 88Th St, Omaha, NE 68124.

18.    Defendants both appear to be currently licensed in TX, in each case, giving the Omaha Compton & Compton law office at the above address in Omaha, NE.

19.    Additionally, Plaintiff discovered that Defendant's former "Bridge Academy of North Dallas", or "BAND", had formed a close working relationship and legal partnership with a face-to face Omaha bridge club, named "Omaha House of Cards":

> "We're excited to announce the merger of Omaha House of Cards with the Bridge Academy of North Dallas (BAND) for online play and lessons. With all brick and mortar bridge clubs closed across the country, we've selected BAND as our best partner. Here's why:
>
> "BAND was the fastest club in the country to put together an online program for all levels of play with Open, 2500er, 1500er, 749er, 499er, 299er, 199er 99er, and 49er on BBO (Bridge Base Online). Click on the live links below to begin the process of playing on BBO, specifically BAND Online games".

20.    The E-mail address of this working and legal partnership is current: OmahaHouseofCards@gmail.com, and functional.

5

21. The address of Omaha House of Cards is: 1941 S 42nd St Ste 411, Omaha, NE, 68105.

22. Defendants are savvy, and have seemingly avoided any mention of home address, which has post-COVID migrated, possibly through Oklahoma, and apparently landed within the past several years in Omaha, NE, where Defendant's legal practice has apparently settled.

23. Neither Texas, nor Oklahoma, nor Nebraska reveal home addresses on their Bar Association credentials.

24. Plaintiff went so far as to research voter rolls, but gaining entry requires knowledge of the birth date of Defendants, which Plaintiff could not find anywhere.

25. Plaintiff was laying the ground work for a Motion for Alternate Service, but was first made informal contact for immediate settlement purposes.

26. Plaintiff did send E-mails to several different addresses for both Defendants, who have been married for over 30 years. There was absolutely zero response to any of those contacts.

27. It is evident that Defendants will refuse any traditional means of service of process, and will surely not sign for any registered or certified mail.

28. Plaintiff has formulated extensive notes, of over 10 pages, on this process, and believes he has been as diligent as

6

possible under the various and mostly unseen events of the past three months.

29. There is extensive precedence for sending E-mails and regular postal mail to Defendants who operate online, and who resist the usual methods of service of process.

30. Here, Defendants know from Plaintiff's informal contact made between April 18, 2025, and April 22, 2025, that this matter is occurring.

31. Plaintiff therefore seeks to serve process with 2 E-mails for each Defendant, and two regular postal mailings to the two good current addresses located:

32. For both, the street address of Compton and Compton Law Office:

For both Defendants, Compton & Compton Law Offices, at 1422 S 88Th St, Omaha, NE 68124.

For both Defendants, Omaha House of Cards:  1941 S 42nd St. Ste 411, Omaha, NE, 68105.

For Defendant Christopher Compton, the relay address of the Bridge Winners site, which has never "bounced back as a delivery failure", and at OmahaHouseofCards@gmail.com.

For Defendant Donna Compton, the relay E-mail address of the Bridge Winners site, which has never "bounced back as a delivery failure", and the current donna@playbetterbridge.com.

33. The Summons for the FAC was issued on April 15, 2025, and is good and effective for 90 days, to July 14, 2025; Plaintiff

7

requests extension of time for filing the Proof of Service on both Compton Defendants to that date of July 14, 2025.

DATE: May 11, 2025.

34. Served today to the Clerk of the Court, and by E-mail on the Chambers of the Honorable Fernando M. Olguin.

*//Gary S. Hann*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE ON CHRISTOPHER AND DONNA COMPTON, AND FOR EXTENSION OF TIME.**

The avoidance of valid personal service of a Summons and Complaint is not an unusual phenomenon, particularly among putative Defendants who are generally unsophisticated in the power and reach of the Courts, and either intent on avoiding consequences of previous actions, or on being drawn into the legal process, or both. Numerous court decisions have supported alternative service to comply with the intent of due process to give "actual notice" of a court proceeding to which the individual has been named.

The Supreme Court has occasionally entered the discussion, opining back in 1965 that even Diversity Cases, as instantly applicable,

8

are entitled to application of the superior Federal Law, if any state laws are contravening, and that "in hand" service is absolutely not required to give Constitutional Notice and an opportunity to be heard:

**IN-HAND SERVICE OF PROCESS IS NOT REQUIRED TO MEET THE CONSTITUTIONAL SUBSTANTIVE DUE PROCESS STANDARD FOR NOTICE AND AN OPPORTUNITY TO BE HEARD.**

380 U.S. 460 (1965)
HANNA v. PLUMER, EXECUTOR. No. 171.
Supreme Court of United States.
Argued January 21, 1965.
Decided April 26, 1965.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT.

> "***We conclude that the adoption of Rule 4 (d) (1), designed to control service of process in diversity actions,[3]*** neither exceeded the congressional mandate embodied in the Rules Enabling Act nor transgressed constitutional bounds, and that the Rule is therefore the standard against which the District Court should have measured the adequacy of the service. Accordingly, we reverse the decision of the Court of Appeals.
>
> The Rules Enabling Act, 28 U. S. C. § 2072 (1958 ed.), provides, in pertinent part:
>
> "The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States in civil actions.
>
> ***"Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury . . . ."***
>
> "Under the cases construing the scope of the Enabling Act, Rule 4 (d) (1) clearly passes muster. Prescribing the manner in which a defendant is to be notified that

9

a suit has been instituted against him, it relates to the "practice and procedure of the district courts." Cf. Insurance Co. v. Bangs, 103 U. S. 435, 439.

"The test must be whether a rule really regulates procedure, —the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." Sibbach v. Wilson & Co., 312 U. S. 1, 14.[4]

--------

***"In the first place, it is doubtful that, even if there were no Federal Rule making it clear that in-hand service is not required in diversity actions, the Erie rule would have obligated the District Court to follow the Massachusetts procedure. "Outcome-determination" analysis was never intended to serve as a talisman. Byrd v. Blue Ridge Cooperative, 356 U. S. 525, 537. Indeed, the message of York itself is that choices between state and federal law are to be made not by application of any automatic, "litmus paper" criterion, but rather by reference to the policies underlying the Erie rule. Guaranty Trust Co. v. York, supra, at 108-112.[6]***

"The Erie rule is rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in a federal court.

"Diversity of citizenship jurisdiction was conferred in order to prevent apprehended discrimination in state courts against those not citizens of the State. Swift v. Tyson introduced grave discrimination by non-citizens against citizens. It made rights enjoyed under the unwritten `general law' vary according to whether enforcement was sought in the state or in the federal court; and the privilege of selecting the court in which the right should be determined was conferred upon the non-citizen. Thus, the doctrine rendered impossible equal protection of the law." Erie R. Co. v. Tompkins, supra, at 74-75.[7]"

**THIS NINTH CIRCUIT CONSTRUES "LIBERALLY" THE PROCESS OF GIVING "ACTUAL NOTICE"**

> *So long as a party receives sufficient notice of the complaint, Rule 4 is to be "liberally construed" to uphold service.* Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir.1994). However, "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4." Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.1986) (citing Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir.1982)

Plaintiff Hann is quite familiar with the Michigan statutes and practices, and recites the relevant ones here:

> **SERVICE OF PROCESS BY PROPERLY ADDRESSED FIRST CLASS US POSTAL MAIL IS VALID AND PRESUMPTIVELY MEETS THE CONSTITUTIONAL STANDARD FOR NOTICE AND AN OPPORTUNITY TO BE HEARD**

Service by Mail. *"The proper addressing and mailing of a letter creates a legal presumption that it was received. This presumption may be rebutted by evidence, but whether it was [received] is a question for the trier of fact."* Stacey v Sankovich, 19 Mich App 688, 694 (1969).

**IN MICHIGAN, NOTICE AND AN OPPORTUNITY TO BE HEARD IS NOT STRICTLY FORMULAIC**

Service will be made in Michigan, and the following Court of Appeals matter affirms that due process is satisfied if the putative defendant "is informed . . . by actual notice . . . [and has] an opportunity to be heard . . . ":

> "Service-of-process rules are intended to satisfy the due process requirement that ***a defendant be informed of the pendency of an action by the best means available, by methods reasonably calculated to give a defendant actual notice*** of the proceeding and an opportunity to be heard and to present objections or defenses." Hill v Frawley, 155 Mich App 611, 613 (1986).

### THE MICHIGAN COURT RULES CONTEMPLATE A CERTAIN NEED FOR SUBSTITUTED SERVICE

Michigan makes clear that substituted service is not only permissible, but permitted; Rule 2.105 Process; Manner of Service is controlling:

Substituted Service. MCR 2.105(J) addresses when and how substituted service can be made. The court may enter an order permitting substituted service if the plaintiff files a verified motion dated not more than 14 days before it is filed. MCR 2.105(J).

### THE MICHIGAN FEDERAL COURT REALIZES THAT SUBSTITUTED SERVICE IS A VALID MEANS OF GIVING "ACTUAL NOTICE"

In the Eastern District of Michigan, where putative Defendant Palmieri lives and does business and personal activities, the Federal District Court has contemplated the need for substituted service as a means of giving notice of an action:

> UNITED STATES OF AMERICA, Plaintiff, v. FREDRICK J. CRISSEY, Defendant.
> Case No. 13-15019.

12

      United States District Court, E.D. Michigan, Southern Division.
      April 25, 2014.
      "Under Michigan law, "***the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice*** of the proceedings and an opportunity to be heard." Mich. Ct. R. 2.105(I)(1)".

      **E-MAIL HAS BEEN APPROVED AS ONE MEANS OF SERVICE BY MULTIPLE COURTS, AND IN FACT, HAS RECENTLY BEEN APPLIED AGAINST THE INSTANT PLAINTIFF BY THE MICHIGAN COURT.**

Plaintiff has recently had lawful service by E-mail being used against him. Numerous Courts have allowed the procedure, this being the 21st Century, and E-mail communication being pervasive and highly functional:

"Federal courts have authorized alternative service of process, including service by e-mail, where a defendant has evaded service and the proposed alternative method is reasonably calculated to provide notice of the action and an opportunity to be heard. Requests for alternative methods of service arise when traditional methods are not possible, particularly, where a defendant has evaded service, defendant's whereabouts are unknown, or defendant's business is exclusively digital in nature. Under such circumstances, courts have held that service by e-mail alone comports with due process so long as the plaintiff

13

establishes the e-mail is likely to reach the defendant and the record discloses diligent efforts by the plaintiff to obtain a physical address to effect traditional service, the defendant conducts business online related to the subject at issue, and the defendant recently communicated using the e-mail address plaintiff proposes to use for service.

Both district and circuit courts across the country have adopted this principle:

- *ECHO Health, Inc. v. Echo Payments,* Case No. 0:23-cv-00741 (D.Minn. May 25, 2023): Granting plaintiff's motion for alternative service of process via e-mail where defendant intentionally concealed its whereabouts and knowingly provided its domain name registrar with a false, incorrect, or invalid address allegedly associated with its business, thereby making service by traditional methods impossible.
- *Seaboard Marine Ltd., Inc. v. Magnum Freight Corp.*, 2017 U.S. Dist. LEXIS 231098, 2017 WL 7796153 (S.D. Fla. Sept. 21, 2017): Authorizing service of process via e-mail where plaintiff presented evidence that defendant evaded service, refused to accept service via FedEx, and had communicated with the e-mail plaintiff proposed to use for service.
- *St. Francis Assisi v. Kuwait Fin. House*, 2016 U.S. Dist. LEXIS 136152 (N.D.Cal. Sept. 30, 2016): Authorizing service of process via Twitter finding it was reasonably calculated to give notice and was not prohibited by international agreement.
- *FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, 2013 WL 841037 (S.D.N.Y. Mar. 7, 2013): Holding service by e-mail and Facebook are reasonably calculated to provide defendants with notice.
- *Power Corp. of Canada v. Power Financial*, 2009 U.S. Dist. LEXIS 31058, 2009 WL 982750 (M.D. Pa. Apr. 13, 2009): Authorizing service of process via e-mail where plaintiff demonstrated service through customary methods was not possible due to defendant's efforts to prevent plaintiff from ascertaining its physical location.

- *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S. Dist. LEXIS 97241, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008): Authorizing service via e-mail where plaintiffs demonstrated the defendants transacted business online and were unsuccessful in effectuating traditional service.
- *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 2004 U.S. Dist. LEXIS 26785 (E.D. Tenn. Nov. 16, 2004): Holding service upon the defendant by e-mail is fully authorized, is the method most likely to reach the defendant, and is reasonably calculated to apprise the defendant of the pendency of the action
- and afford it an opportunity to be heard.  The Court further reasoned an e-mail sent to an e-mail address supplied by the defendant to its domain name registrar presumably reached defendant since it did not bounce back.
- *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002): Holding service of process by e-mail was proper not only because it was reasonably calculated to apprise the defendant of the pendency of the action and afford it an opportunity to respond, but also because it was the method of service most likely to reach the defendant.

Although the decision to allow service by alternate methods lies solely within the discretion of the court, it is clear courts agree that as technology advances, a defendant should not be allowed to evade service by confining itself to methods of communication not specifically mentioned in the Federal Rules.  Courts have further recognized that when a defendant is playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process. Authorization of service by e-mail and other alternative methods under federal law ultimately seeks to prevent such gamesmanship.

15

**THE COURT'S DECISION MAKING PROCESS IN DETERMINING THE FACTS AND APPLYING THE LAW FOR ORDERING SUBSTITUTED SERVICE AND AN EXTENSION OF TIME.**

Finally, a detailed opinion from the applicable Federal Court Judge, generally indistinguishable from the instant matter despite a few differing details, delineating the considerations made by the Court in arriving at a decision to order substitutes service:

> THOMAS SANDUSKY, Plaintiff, v. SARAH ALBERS, et al., Defendants.
> Case No. 18-11533.
> United States District Court, E.D. Michigan, Southern Division.
> August 22, 2018.
>
> ORDER GRANTING PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE AND EXTENSION OF TIME TO EFFECT SERVICE [10]
>
> NANCY G. EDMUNDS, District Judge.
>
> "Federal Rule of Civil Procedure 4(m) requires service within 90 days after a complaint is filed:
>
> "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But ***if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.***
>
> "Fed. R. Civ. P. 4(m). ***The plaintiff has the burden of establishing good cause***, and the determination of good cause is left to the sound discretion of the district court. Habib v. Gen. Motors Corp., 15 F.3d 72, 73 (6th Cir. 1994).
>
> "Federal Rule of Civil Procedure 4 also sets forth the rules for serving individuals in subsection (e) and

provides that *service may be accomplished by "following state law for serving a summons in an action* brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). An individual may also be served by delivering a copy of the summons and complaint to the individual personally, leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or by delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2).

"Under Michigan law, an individual may be served by "delivering a summons and a copy of the complaint to the defendant personally," or by "sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail." Mich. Ct. R. 2.105(A). *The Michigan rule also provides that, "[o]n a showing that service of process cannot reasonably be made as provided by this rule, the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard." Id. at 2.105(I)(1).*

"*To obtain permission for alternate service, the plaintiff must establish (1) that service cannot be made by the prescribed means, and (2) that the proposed alternate method is likely to give actual notice.*" United States v. Szaflarski, No. CIV. 11-10275, 2011 WL 2669478, at *1 (E.D. Mich. July 7, 2011)".

"*Each time service was attempted, there was "no answer" at the address*".

"*The process server left a card on the door each time, and each card was gone the next time the process server returned*".

"*E. Bacon has not called the process server back*. Plaintiff maintains that E. Bacon is attempting to evade service".

17

> "Under these circumstances, ***the Court agrees that E. Bacon appears to be aware of attempts to serve her with this lawsuit and is seemingly evading service***. The Court will grant Plaintiff's request to alternatively serve E. Bacon because the Court finds that service of process cannot reasonably be made as provided in the rules discussed above. The Court concludes that the proposed alternate method is likely and reasonably calculated to give E. Bacon actual notice of the proceedings in this Court and an opportunity to be heard".

> "The Court finds that Plaintiff has made a showing of good cause to extend the time to serve the summonses and complaint . . . "

Based on Plaintiff's Declaration, and a multiplicity of cases applying the applicable standards as permitted by Federal Rule 4, that Defendants will receive constitutionally valid service of process.

From the Nebraska Process Server site:

25-505.01. Service of summons; methods.

Unless otherwise limited by statute or by the court, a plaintiff may elect to have service made by any of the following methods:

Personal service which shall be made by leaving the summons with the individual to be served;

Residence service which shall be made by leaving the summons at the usual place of residence of the individual to be served, with some person of suitable age and discretion residing therein; or

Certified mail service which shall be made within ten days of issuance, sending the summons to the defendant by certified mail with a return receipt requested showing to whom and where delivered

18

and the date of delivery, and filing with the court proof of service with the signed receipt attached.

Plaintiff Hann is not as familiar with the State of Nebraska's specific statutes, and researching them has proved less than reasonable readability, and only very specific case law, which is inapplicable to this instant proceeding.  Thus, Plaintiff relies primarily on federal service of process pursuant to Federal Rule 4, giving constitutionally valid notice and an ensuing opportunity to be heard.

Plaintiff is confident that the two addresses, and two E-mails for each of Defendant Christopher Compton, and Defendant Donna Compton, will be more than sufficient to provide actual notice of this proceeding, with which both Defendants have already been informally notified.

Plaintiff will not need an extension of time past the Court's recent Minute Order, which requires service by June 5, 2025, despite that the Court's recent Summons regarding the recently filed First Amended Complaint, extending from April 15, 2025 to July 14, 2025, should the Court execute the Proposed Order for Substitute Service.

However, should the Court require that a process server attempt some form of more personal, real time service of process, then the Court's deadline date of June 5, 2025, will almost surely prove inadequate.  It is obviously the Court's prerogative to issue reasonable orders; Plaintiff urges the Court to sign the included Proposed Order for Alternative Service and for extension of time.

Plaintiff has shown that potential posting anywhere will not appreciably give further notice than the very effective methods proposed by Plaintiff, and will save Plaintiff about $125 for a trip by a process server.  Plaintiff respectfully urges the Court to issue the appropriate, proposed order.

Plaintiff relies on this Ex-Parte Petition, because his disability prevents him from taking more than a full day to venture from the Palm Desert area to downtown Los Angeles, about 125 difficult miles each way, for a rather simple and straightforward, likely perfunctory, hearing.

DATE:  May 11, 2025

*//Gary S. Hann*