GARY S. HANN, pro se
Plaintiff
yragnnah@gmail.com
P.O. Box 711
Cathedral City, CA 92235-0711
734-480-4140

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| _____ | Case No. 5:25-cv-00165-FMO-SHKx |
| GARY S. HANN, | |
| PLAINTIFF, | JUDGE: HON. FERNANDO M. OLGUIN |
| VS. | MAGISTRATE JUDGE: SHASHI H. KEWALRAMANI |
| Christopher Compton and Donna Compton, | PLAINTIFF HANN'S EX-PARTE MOTION FOR ALTERNATIVE SERVICE TO AVOID DENIAL OF DUE PROCESS TO PRO-SE PLAINTIFF. |
| Defendants. | |
| | HEARING: NONE |
| | JURY TRIAL DEMANDED |

**NOTICE TO THE COURT OF DENIAL OF DUE PROCESS**

Plaintiff Gary S. Hann's Declaration:

1

1.    I am over the age of 18, and if called to testify to the below, I am competent and completely able to do so.

2.    I have been avidly playing and observing the Duplicate Bridge Tournament arena for 58 years.

3.    It has become commonplace that tournament bridge professionals, such as Defendants herein, travel extensively, perhaps 40-48 weeks a year, within the US, and even outside the US at times.

4.    These professionals' travel schedule is directly tied to their wealthy client's wishes and desires.

5.    Traveling tournament professionals, occasionally or often, teach bridge lessons to aspiring bridge players of a variety of talents, who are vitally interested in the opinions and instruction of top bridge experts, such as Defendants herein.

6.    In this electronic age, top rated, "name" professionals, such as Defendants herein, rarely are in one place, even their home base, for much more than a couple of days at a time, if that.

7.    These highly respected "name" professionals have evolved, even before COVID, to have migrated their teaching lessons to an electronic level, teaching classes from wherever they happen to be at the designated time.

8.    Post-COVID, it has become the nearly universal norm, that such top expert professionals either a) record their presentations,

2

which are then replayed to a different audience, and thus often are "teaching" pre-recorded materials, often with a local bridge player to organize the paying audience and respond to queries and comments.

9.    These expert professionals, such as Defendants herein, teach primarily to promote their brand to much less experienced players, some of whom might become lucrative clients at some point.

10.    In the specific case of Defendants Compton and Compton, who are long licensed attorneys, their legal skills are used almost exclusively in cases of "cheating at the game of bridge", to prosecute and/or defend financially well off players who are facing suspension and/or expulsion.

11.    Such work does not require, or even need, an office location; the cases are ultimately pled and adjudicated before panels at National Tournament sites, or panels that are meeting by secured Zoom.

12.    Thus, attorneys such as Defendants, do not have to be at any particular geographical location to represent their clients.

13.    It is a near certainty, that one address uncovered, is little more than a mail drop, perhaps a P.O. Box with an address, and option taken by Plaintiff for his P.O. Box in Cathedral City, CA.

14.  The second address noted by the Court, for the Omaha House of Cards, is a typical bridge face-to-face location, with employees operating the Enterprise on a day to day and week to week basis.

15.  Given that Defendants travel the vast majority of their time, it is a near certainty that the only appear at the Omaha House of Cards rarely, if ever, and if they do end up there in person, it would likely not be pre-scheduled for certain.

16.  It is entirely possible, in Plaintiff's experience with such top "name" bridge players, that they either appear from wherever they happen to be at, to a video screen at the Omaha House of Cards, to teach bridge lessons from time to time.

17.  It is also possible that Defendants pre-record presentations, and they are simply played to a new group of students, with local expert bridge players to answer specific questions of the participants in attendance.

18.  In short, Defendants might never appear at either of the addresses uncovered by Plaintiff.

19.  Therefore, Plaintiff never consider the futile exercise of hiring and paying one or more process servers in a city to which he has no ties.

20.  Such fruitless effort by Plaintiff would have accomplished nothing, except to drain Plaintiff's wallet and

4

consequently show the Court that Defendants could not reasonably be served.

21.  As Plaintiff stated in a prior Declaration, he decided to notify Defendants of this action, and they are certain to have viewed these proceedings.

22.  Defendants are likely amused by the fact that service by traditional means is not available to bring them to Court to answer to their grievous wrongs against Plaintiff Hann.

Dated:  June 29. 2025.

*//Gary S. Hann*

**DISCUSSION**

A.    Plaintiff urges the Court to adopt Plaintiff's notification process of two mailings to the two addresses, which could additionally include "certificated of mailing" stamped by the Post Office, and two E-mails to each Defendant.

B.   Should the Court find it useful, Plaintiff could also post a message on the Facebook pages of each Defendant, which would actually notify more than just Defendants.

C.  Pro se Plaintiff has worked with exceptional diligence to prosecute this action; the recently issued Summons is still good for another 15 days.

D.  As the Court is aware, Plaintiff Hann is a pro se Plaintiff, and the Supreme Court and the 9th Circuit require lenience and reasonable accommodation.

E.   The Court's recent denial of Plaintiff's thorough Ex-Parte Motion for Alternative Service and Extension of Time, without explanation, has prejudiced the interests of justice, which favors cases being determined on their merits.

F.  Plaintiff has shown that Defendants, both savvy attorneys of about 30 years each, have effectively concealed their home address, to the extent that Plaintiff doesn't know in which state they reside, or which state laws are applicable.

G.  Plaintiff Hann is entitled to bring an action for judicial relief, and the instant Defendants are, in being held accountable, to be afforded every available means of Due Process.

H.  In 1940, Mr. Justice Douglas, opined for the Supreme Court in 311 US 457, that Due Process is satisfied with Alternative Service:

> "That such substituted service may be wholly adequate to meet the requirements of due process was recognized by this Court in *McDonald v. Mabee*, 243 U.S. 90, despite earlier intimations to the contrary. See *Pennoyer v. Neff*, 95 U.S. 714, 733; Burdick, Service as a Requirement

6

of Due Process in Actions In Personam, 20 Mich.L.Rev. 422. Its adequacy so far as due process is concerned is dependent on whether or not the form of substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice (*McDonald v. Mabee*, supra) implicit in due process are satisfied".

I.   Plaintiff has proposed US Postal Service mail to Defendants at their Compton & Compton Law Office in Omaha, NE, and also by mailing to their co-owned Omaha House of Cards bridge players business, also on Omaha, NE.

J.   Plaintiff has also proposed E-mailing each Defendant's personal E-mail, and also to Defendant's E-mail at the Bridge Players Bridge Winner's longstanding site, where the instant infraction occurred.

K.   This would mean 2 US Postal Service mailings, and 2 E-mails to each Defendant, giving more than adequate notice of this matter.  Further, should Defendants ultimately default here, they have the option to petition the Court to set aside the proceedings and re-open the matter.

L.   Defendants are both already well aware of this matter; Plaintiff has E-mail both Defendants, twice each, informally, without any response.

M.   Defendants have lived in Dallas, TX, for most of their adult lives, and at one point appeared to have a legal office in

7

Oklahoma, and now there is evidence of a recent possible relocation

to the Omaha, NE area.

N.  Plaintiff has repeatedly researched all three states for

a home address, unsuccessfully, and quite frankly, does not know

which of those states service as the abode for each Defendant;

thus, it is impossible to determine which law of which of three

states is to be applied to each of the Defendants.  It appears

that their law licenses are still with the state of Texas.

O.  In *TEE TURTLE, LLC, Plaintiff, v. ABMASK*, et al.,

Defendants.  Case  No.  2:21-CV-03572-CBM-(Ex).  United  States

District  Court,  C.D.  California.  November  17,  2021.,  Judge

Marshall,  to  whom  this  matter  was  originally  assigned,  ordered

alternative service by electronic means:

> "3. On April 29, 2021, the Court granted Plaintiff's Ex
> Parte Application for an Order Granting Leave for
> Alternative Service by Electronic Means. (Dkt. No. 17.)
> 4.  Plaintiff  filed  a  proof  of  service  reflecting
> electronic service of the Verified Complaint and Summons
> on all Defendants other than Defendant Happylifes on May
> 3, 2021, and electronic service on Defendant Happylifes
> on May 5, 2021, in the manner approved by the Court in
> its  Order  Granting  Leave  for  Alternative  Service  by
> Electronic Means. (Dkt. No. 32; see also Dkt. No. 31-
> 1.)"

P.  Plaintiff has not submitted a Proposed Order, because the

Court may wish to order such other remedies as ordering service of

a Waiver of Service and/or other means than proposed below.

Q.  Plaintiff petitioned for, and received, a Summons for his amended Complaint, on April 15, 2025.

R.  The new, 90-day Summons, doesn't expire until July 14, 2025, yet the Court has surprisingly ordered that service be completed on Defendants by June 5, 2025.

S.  Plaintiff therefore re-requests that the Court extend the time for service of the Summons & First Amended Complaint to July, 14, 2025.

T.  Should the Court so direct, Plaintiff will immediately submit a Proposed Order pending the Court's hoped for granting of the Motion as declared below and as previously submitted.

U.  Plaintiff further states that neither Defendant is in the Military Service or is incompetent or incapacitated.

V.  Plaintiff sincerely appreciates that the Court reinstituted permission for electronic access for filing.

**PRIOR, SLIGHTLY MODIFIED, DECLARATION OF PLAINTIFF GARY S. HANN**

I am over the age of 18, and if my testimony is needed, I am competent to testify thereto:

1.  Plaintiff is very aged, and has been 100% permanently disabled, as of his Physician's declaration of 2002.

2.  Plaintiff Hann is a pro-se frail, nearly 76 year old gent who lives quietly in the Coachella Valley, and would find great

9

difficulty in personally delivering documents or attending hearings in Riverside, the very much less so in massively crowded and nearly unattainable downtown Los Angeles.

3.    Plaintiff's meager retirement income includes a small tract home in Michigan, the free and clear title of which has been challenged fraudulently for quiet title, requiring his complete attention since being served E-mail process in early January, 2025, taking and sapping a massive amount of his time.

4.    For about 3 intensive weeks, Plaintiff was researching the numerous businesses of the two Defendants, both attorneys, in an attempt to divine their home address, for service of process pursuant to the Federal Rules, or even the apparent Texas rules.

5.    For the past week, Plaintiff has compiled over 10 pages of notes on Christopher and Donna Compton, a married couple of well over 30 years, who are professional bridge tournament players, and highly qualified bridge teachers, under the umbrella of the American Contract Bridge League ("ACBL").

6.    Plaintiff Gary S. Hann ("Hann"), has been a member of the American Contract Bridge League ("ACBL") for well over a half-century, first encountering Christopher Compton in the last 1970s.

7.    Defendants Compton and Compton are also both attorneys, and who resided pre-COVID in North Dallas, TX, running a large bridge club, both in-person and online, to a high level of success.

10

8.   It did appear at that time, that there was a business office for one or both of Defendants, in Oklahoma; Plaintiff therefore has researched that state, though finding nothing other than that single point of reference.

9.   Since filing his Complaint, Plaintiff has expended about 25-30 hours of time looking, and looking again, at any place that might have revealed a home address for either or both Defendants.

10.  During this address/contact ordeal, Plaintiff discovered multiple businesses, which had evolved since COVID to purely online activity, but with two updated, legitimate street addresses.

11.  Plaintiff's research has been wide ranging, and seemingly all-encompassing, looking at such possibilities as:

> The "Bridge Winners", a world-wide go-to site for good to excellent bridge players, North American based, but open to all, with many International participants.  Both Defendants have fully functional E-mails there, which relay any communication to their personal E-mails.

> Facebook; both Comptons Defendants have reference pages there. The Bar Association web sites for TX, OK and NBB (none give home addresses, Defendants are still both licensed in TX, with E-mails listed).

> Voter Rolls for TX, OK, NE (No home addresses were revealed in any state).

> Linked In for Defendant Donna Compton, required Plaintiff to set up an account, which he declined to do.

12.  Searching Defendant's names online, revealing that Defendant Christopher Compton once had a personal E-mail of

chriscompton@mindspring.com, which seems not to be functional currently.

13.    Additionally, for Defendant Christopher Compton, the E-mail bridgeacademy@mindspring.com does not bounce back, suggesting current functionality.

14.    For Defendant Donna Compton, online entries showed that her moniker "Play Better Bridge" revealed a working E-mail: Donna@PlayBetterBridge.com.

15.    Plaintiff discovered "Bridge Academy of North Dallas", which seems to be out of date, given the apparent move from Dallas to Omaha, NE.    Plaintiff will not use any of those pre-COVID E-mails.

16.    Plaintiff located a site called "Lawyers.com", which seemed to give a reference to a street address for Defendant Donna Compton.    However, when Plaintiff looked up that address, he found that the property hadn't transferred or been sold since 1999, a very long time ago, and Plaintiff discounts that address found nowhere else, as one or both Defendants would likely have purchased a property in Omaha, NE, rather than rented or shared.

17.    There were numerous online references to the Compton & Compton Law Offices, at 1422 S 88Th St, Omaha, NE 68124.

18.   Defendants both appear to be currently licensed in TX, in each case, given the Compton & Compton law office at the above address in Omaha, NE.

19.   Additionally, Plaintiff discovered that Defendant's former "Bridge Academy of North Dallas", or "BAND", had formed a close working relationship and legal partnership with a face-to face [brick and mortar] Omaha bridge club, named "Omaha House of Cards":

> "We're excited to announce the merger of Omaha House of
> Cards with the Bridge Academy of North Dallas (BAND) for
> online play and lessons. With all brick and mortar bridge
> clubs closed across the country, we've selected BAND as
> our best partner. Here's why:

> "BAND was the fastest club in the country to put together
> an online program for all levels of play with Open,
> 2500er, 1500er, 749er, 499er, 299er, 199er 99er, and
> 49er on BBO (Bridge Base Online). Click on the live links
> below to begin the process of playing on BBO,
> specifically BAND Online games".

20.   The E-mail address of this working and legal partnership is current: OmahaHouseofCards@gmail.com, and functional.

21.   The address of Omaha House of Cards is: 1941 S 42nd St Ste 411, Omaha, NE, 68105.

22.   Defendants are savvy, and have seemingly avoided any mention of home address, which has post-COVID migrated, possibly through Oklahoma, and apparently landed within the past several

years in Omaha, NE, where Defendant's legal practice has apparently settled.

23.    Neither Texas, nor Oklahoma, nor Nebraska reveal home addresses on their Bar Association credentials.

24.    Plaintiff went so far as to research voter rolls, but gaining entry requires knowledge of the birth date of Defendants, which Plaintiff could not find anywhere.

25.    Plaintiff was laying the ground work for a Motion for Alternate Service, but was first made informal contact for immediate settlement purposes.

26.    Plaintiff did send E-mails to several different addresses for both Defendants, who have been married for over 30 years. There was absolutely zero response to any of those contacts.

27.    It is evident that Defendants will refuse any traditional means of service of process, and will surely not sign for any registered or certified mail.

28.    Plaintiff has formulated extensive notes, of over 10 pages, on this process, and believes he has been as diligent as possible under the various and mostly unseen events of the past three months.

29.    There is extensive precedence for sending E-mails and regular postal mail to Defendants who operate online, and who resist the usual methods of service of process.

14

30.   Here, Defendants know from Plaintiff's informal contact made between April 18, 2025, and April 22, 2025, that this matter is occurring.

31.   Plaintiff therefore seeks to serve process with 2 E-mails for each Defendant, and two regular postal mailings to the two good current addresses located:

32.   For both, the street address of Compton and Compton Law Office:

> For both Defendants, Compton & Compton Law Offices, at 1422 S 88Th St, Omaha, NE 68124.

> For both Defendants, Omaha House of Cards:  1941 S 42nd St. Ste 411, Omaha, NE, 68105.

> For Defendant Christopher Compton, the relay address of the Bridge Winners site, which has never "bounced back as a delivery failure", and at OmahaHouseofCards@gmail.com.

> For Defendant Donna Compton, the relay E-mail address of the Bridge Winners site, which has never "bounced back as a delivery failure", and the current donna@playbetterbridge.com.

33.   The Summons for the FAC was issued on April 15, 2025, and is good and effective for 90 days, to July 14, 2025; Plaintiff requests extension of time for filing the Proof of Service on both Compton Defendants to that date of July 14, 2025.

DATE: June 29, 2025.

34.   Served today to the Clerk of the Court, and by E-mail on the Chambers of the Honorable Fernando M. Olguin.

*//Gary S. Hann*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE ON CHRISTOPHER AND DONNA COMPTON, AND FOR EXTENSION OF TIME.**

The avoidance of valid personal service of a Summons and Complaint is not an unusual phenomenon, particularly among putative Defendants who are generally unsophisticated in the power and reach of the Courts, and either intent on avoiding consequences of previous actions, or on being drawn into the legal process, or both.  Numerous court decisions have supported alternative service to comply with the intent of due process to give "actual notice" of a court proceeding to which the individual has been named.

The US Supreme Court has occasionally entered the discussion, opining back in 1965 that even Diversity Cases, as instantly applicable, are entitled to application of the superior Federal Law, if any state laws are contravening, and that "in hand" service is absolutely not required to give Constitutional Notice and an opportunity to be heard:

16

**IN-HAND SERVICE OF PROCESS IS NOT REQUIRED TO MEET THE
CONSTITUTIONAL SUBSTANTIVE DUE PROCESS STANDARD FOR
NOTICE AND AN OPPORTUNITY TO BE HEARD.**

380 U.S. 460 (1965)
HANNA v. PLUMER, EXECUTOR. No. 171.
Supreme Court of United States.
Argued January 21, 1965.
Decided April 26, 1965.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST
CIRCUIT.

*"We conclude that the adoption of Rule 4 (d) (1),
designed to control service of process in diversity
actions,[3]* neither exceeded the congressional mandate
embodied in the Rules Enabling Act nor transgressed
constitutional bounds, and that the Rule is therefore
the standard against which the District Court should
have measured the adequacy of the service. Accordingly,
we reverse the decision of the Court of Appeals.

The Rules Enabling Act, 28 U. S. C. § 2072 (1958 ed.),
provides, in pertinent part:

   "The Supreme Court shall have the power to prescribe,
by general rules, the forms of process, writs, pleadings,
and motions, and the practice and procedure of the
district courts of the United States in civil actions.

   *"Such rules shall not abridge, enlarge or modify any
substantive right and shall preserve the right of trial
by jury . . . ."*

"Under the cases construing the scope of the Enabling
Act, Rule 4 (d) (1) clearly passes muster. Prescribing
the manner in which a defendant is to be notified that
a suit has been instituted against him, it relates to
the "practice and procedure of the district courts." Cf.
*Insurance Co. v. Bangs*, 103 U. S. 435, 439.

   "The test must be whether a rule really regulates
procedure, —the judicial process for enforcing rights
and duties recognized by substantive law and for justly
administering remedy and redress for disregard or
infraction of them." *Sibbach v. Wilson & Co.*, 312 U. S.
1, 14.[4]

17

--------

*"In the first place, it is doubtful that, even if there
were no Federal Rule making it clear that in-hand service
is not required in diversity actions, the Erie rule would
have obligated the District Court to follow the
Massachusetts procedure. "Outcome-determination"
analysis was never intended to serve as a talisman. Byrd
v. Blue Ridge Cooperative, 356 U. S. 525, 537. Indeed,
the message of York itself is that choices between state
and federal law are to be made not by application of any
automatic, "litmus paper" criterion, but rather by
reference to the policies underlying the Erie rule.
Guaranty Trust Co. v. York, supra, at 108-112.[6]*

"The Erie rule is rooted in part in a realization that
it would be unfair for the character or result of a
litigation materially to differ because the suit had
been brought in a federal court.

"Diversity of citizenship jurisdiction was conferred in
order to prevent apprehended discrimination in state
courts against those not citizens of the State. Swift v.
Tyson introduced grave discrimination by non-citizens
against citizens. It made rights enjoyed under the
unwritten `general law' vary according to whether
enforcement was sought in the state or in the federal
court; and the privilege of selecting the court in which
the right should be determined was conferred upon the
non-citizen. Thus, the doctrine rendered impossible
equal protection of the law." Erie R. Co. v. Tompkins,
supra, at 74-75.[7]"

## THIS NINTH CIRCUIT CONSTRUES "LIBERALLY" THE PROCESS OF GIVING "ACTUAL NOTICE"

*So long as a party receives sufficient notice of the
complaint, Rule 4 is to be "liberally construed" to
uphold service.* Chan v. Soc'y Expeditions, Inc., 39 F.3d
1398, 1404 (9th Cir.1994). However, "neither actual
notice nor simply naming the defendant in the complaint
will provide personal jurisdiction without substantial

compliance with Rule 4." Benny v. Pipes, 799 F.2d 489,
492 (9th Cir.1986) (citing Jackson v. Hayakawa, 682 F.2d
1344, 1347 (9th Cir.1982)

Plaintiff Hann is quite familiar with the Michigan statutes and

practices, and recites the relevant ones here:

**SERVICE OF PROCESS BY PROPERLY ADDRESSED FIRST CLASS
US POSTAL MAIL IS VALID AND PRESUMPTIVELY MEETS THE
CONSTITUTIONAL STANDARD FOR NOTICE AND AN OPPORTUNITY
TO BE HEARD**

Service by Mail. ***The proper addressing and mailing of a letter
creates a legal presumption that it was received. This presumption
may be rebutted by evidence, but whether it was [received] is a
question for the trier of fact." Stacey v Sankovich, 19 Mich App
688, 694 (1969).***

**IN MICHIGAN, NOTICE AND AN OPPORTUNITY TO BE HEARD IS NOT
STRICTLY FORMULAIC**

Service will be made in Michigan, and the following Court of

Appeals matter affirms that due process is satisfied if the

putative defendant "is informed . . . by actual notice . . . [and

has] an opportunity to be heard . . . ":

> "Service-of-process rules are intended to satisfy the
> due process requirement that ***a defendant be informed of
> the pendency of an action by the best means available,
> by methods reasonably calculated to give a defendant
> actual notice*** of the proceeding and an opportunity to be
> heard and to present objections or defenses." Hill v
> Frawley, 155 Mich App 611, 613 (1986).

19

**THE MICHIGAN COURT RULES CONTEMPLATE A CERTAIN NEED FOR
SUBSTITUTED SERVICE**

Michigan makes clear that substituted service is not only
permissible, but permitted; Rule 2.105 Process; Manner of Service
is controlling:

Substituted Service. MCR 2.105(J) addresses when and how
substituted service can be made. The court may enter an order
permitting substituted service if the plaintiff files a verified
motion dated not more than 14 days before it is filed. MCR
2.105(J).

**THE MICHIGAN FEDERAL DISTRICT COURT REALIZES THAT SUBSTITUTED
SERVICE IS A VALID MEANS OF GIVING "ACTUAL NOTICE"**

In the Eastern District of Michigan, where putative Defendant
Palmieri lives and does business and personal activities, the
Federal District Court has contemplated the need for substituted
service as a means of giving notice of an action:

> *UNITED STATES OF AMERICA, Plaintiff, v. FREDRICK J.
> CRISSEY*, Defendant.
> Case No. 13-15019.
> United States District Court, E.D. Michigan, Southern
> Division.
> April 25, 2014.
> "Under Michigan law, "***the court may by order permit
> service of process to be made in any other manner
> reasonably calculated to give the defendant actual
> notice*** of the proceedings and an opportunity to be
> heard." Mich. Ct. R. 2.105(I)(1)".

20

**E-MAIL HAS BEEN APPROVED AS ONE MEANS OF SERVICE BY MULTIPLE COURTS, AND IN FACT, HAS RECENTLY BEEN APPLIED AGAINST THE INSTANT PLAINTIFF BY THE MICHIGAN COURT.**

Plaintiff has recently had lawful service by E-mail being approved and used against him.  Numerous Courts have allowed the procedure, this being the 21st Century, and E-mail communication being pervasive and highly functional:

"Federal courts have authorized alternative service of process, including service by e-mail, where a defendant has evaded service and the proposed alternative method is reasonably calculated to provide notice of the action and an opportunity to be heard.

Requests for alternative methods of service arise when traditional methods are not possible, particularly, where a defendant has evaded service, defendant's whereabouts are unknown, or defendant's business is exclusively digital in nature.

Under such circumstances, courts have held that service by e-mail alone comports with due process so long as the plaintiff establishes the e-mail is likely to reach the defendant and the record discloses diligent efforts by the plaintiff to obtain a physical address to effect traditional service, the defendant conducts business online related to the subject at issue, and the

defendant recently communicated using the e-mail address plaintiff

proposes to use for service.

    Both district and circuit courts across the country have adopted

this principle:

- *ECHO Health, Inc. v. Echo Payments,* Case No. 0:23-cv-00741
  (D.Minn. May 25, 2023): Granting plaintiff's motion for
  alternative service of process via e-mail where defendant
  intentionally concealed its whereabouts and knowingly
  provided its domain name registrar with a false, incorrect,
  or invalid address allegedly associated with its business,
  thereby making service by traditional methods impossible.
- *Seaboard Marine Ltd., Inc. v. Magnum Freight Corp.*, 2017 U.S.
  Dist. LEXIS 231098, 2017 WL 7796153 (S.D. Fla. Sept. 21,
  2017): Authorizing service of process via e-mail where
  plaintiff presented evidence that defendant evaded service,
  refused to accept service via FedEx, and had communicated
  with the e-mail plaintiff proposed to use for service.
- *St. Francis Assisi v. Kuwait Fin. House*, 2016 U.S. Dist. LEXIS
  136152 (N.D.Cal. Sept. 30, 2016): Authorizing service of
  process via Twitter finding it was reasonably calculated to
  give notice and was not prohibited by international
  agreement.
- *FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, 2013 WL
  841037 (S.D.N.Y. Mar. 7, 2013): Holding service by e-mail and
  Facebook are reasonably calculated to provide defendants with
  notice.
- *Power Corp. of Canada v. Power Financial*, 2009 U.S. Dist.
  LEXIS 31058, 2009 WL 982750 (M.D. Pa. Apr. 13, 2009):
  Authorizing service of process via e-mail where plaintiff
  demonstrated service through customary methods was not
  possible due to defendant's efforts to prevent plaintiff from
  ascertaining its physical location.
- *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S.
  Dist. LEXIS 97241, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008):
  Authorizing service via e-mail where plaintiffs demonstrated
  the defendants transacted business online and were
  unsuccessful in effectuating traditional service.
- *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D.
  560, 2004 U.S. Dist. LEXIS 26785 (E.D. Tenn. Nov. 16, 2004):
  Holding service upon the defendant by e-mail is fully
  authorized, is the method most likely to reach the defendant,

and is reasonably calculated to apprise the defendant of the pendency of the action

- and afford it an opportunity to be heard.  The Court further reasoned an e-mail sent to an e-mail address supplied by the defendant to its domain name registrar presumably reached defendant since it did not bounce back.

- *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002): Holding service of process by e-mail was proper not only because it was reasonably calculated to apprise the defendant of the pendency of the action and afford it an opportunity to respond, but also because it was the method of service most likely to reach the defendant.

Although the decision to allow service by alternate methods lies solely within the discretion of the court, it is clear courts agree that as technology advances, a defendant should not be allowed to evade service by confining itself to methods of communication not specifically mentioned in the Federal Rules.  Courts have further recognized that when a defendant is playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process.  Authorization of service by e-mail and other alternative methods under federal law ultimately seeks to prevent such gamesmanship.

**THE COURT'S DECISION MAKING PROCESS IN DETERMINING THE FACTS AND APPLYING THE LAW FOR ORDERING SUBSTITUTED SERVICE AND AN EXTENSION OF TIME.**

Finally, a detailed opinion from the applicable Michigan Federal Court Judge, generally indistinguishable from the instant

matter despite a few differing details, delineating the considerations made by the Court in arriving at a decision to order substitutes service:

> THOMAS SANDUSKY, Plaintiff, v. SARAH ALBERS, et al.,
> Defendants.
> Case No. 18-11533.
> United States District Court, E.D. Michigan, Southern Division.
> August 22, 2018.
>
> ORDER GRANTING PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE AND EXTENSION OF TIME TO EFFECT SERVICE [10]
>
> NANCY G. EDMUNDS, District Judge.
>
> "Federal Rule of Civil Procedure 4(m) requires service within 90 days after a complaint is filed:
>
> "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But ***if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.***
>
> "Fed. R. Civ. P. 4(m). ***The plaintiff has the burden of establishing good cause,*** and the determination of good cause is left to the sound discretion of the district court. Habib v. Gen. Motors Corp., 15 F.3d 72, 73 (6th Cir. 1994).
>
> "Federal Rule of Civil Procedure 4 also sets forth the rules for serving individuals in subsection (e) and provides that ***service may be accomplished by "following state law for serving a summons in an action*** brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). An individual may also be served by delivering a copy of the summons and complaint to the individual personally, leaving a copy of each at the

24

individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or by delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2).

"Under Michigan law, an individual may be served by "delivering a summons and a copy of the complaint to the defendant personally," or by "sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail." Mich. Ct. R. 2.105(A). *The Michigan rule also provides that, "[o]n a showing that service of process cannot reasonably be made as provided by this rule, the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard." Id. at 2.105(I)(1).*

"*To obtain permission for alternate service, the plaintiff must establish (1) that service cannot be made by the prescribed means, and (2) that the proposed alternate method is likely to give actual notice.*" *United States v. Szaflarski*, No. CIV. 11-10275, 2011 WL 2669478, at *1 (E.D. Mich. July 7, 2011)".

"*Each time service was attempted, there was "no answer" at the address*".

"*The process server left a card on the door each time, and each card was gone the next time the process server returned*".

"*E. Bacon has not called the process server back*. Plaintiff maintains that E. Bacon is attempting to evade service*".

"Under these circumstances, *the Court agrees that E. Bacon appears to be aware of attempts to serve her with this lawsuit and is seemingly evading service*. The Court will grant Plaintiff's request to alternatively serve E. Bacon because the Court finds that service of process cannot reasonably be made as provided in the rules

25

discussed above. The Court concludes that the proposed
alternate method is likely and reasonably calculated to
give E. Bacon actual notice of the proceedings in this
Court and an opportunity to be heard".

"The Court finds that Plaintiff has made a showing of
good cause to extend the time to serve the summonses and
complaint . . . "

Based on Plaintiff's Declaration, and a multiplicity of cases

applying the applicable standards as permitted by Federal Rule 4,

that Defendants will receive constitutionally valid service of

process.


From the State of Nebraska Process Server site:

25-505.01. Service of summons; methods.

Unless otherwise limited by statute or by the court, a
plaintiff may elect to have service made by any of the
following methods:

Personal service which shall be made by leaving the
summons with the individual to be served;

Residence service which shall be made by leaving the
summons at the usual place of residence of the individual
to be served, with some person of suitable age and
discretion residing therein; or

Certified mail service which shall be made within ten
days of issuance, sending the summons to the defendant
by certified mail with a return receipt requested
showing to whom and where delivered and the date of
delivery, and filing with the court proof of service
with the signed receipt attached.

26

Plaintiff Hann is not as familiar with the State of Nebraska's specific statutes, and researching them has proved less than reasonable readability, and only very specific case law, which is inapplicable to this instant proceeding. Thus, Plaintiff relies primarily on federal service of process pursuant to Federal Rule 4, giving constitutionally valid notice and an ensuing opportunity to be heard.

Plaintiff is confident that the two addresses, and two E-mails for each of Defendant Christopher Compton, and Defendant Donna Compton, will be more than sufficient to provide actual notice of this proceeding, with which both Defendants have already been informally notified.

Plaintiff will not need an extension of time.

The Clerk of the Court's recent Summons regarding Plaintiff's filed First Amended Complaint ("FAC"), extending from April 15, 2025 to July 14, 2025, should the Court execute the Proposed Order for Substitute Service.

Plaintiff has shown that potential posting anywhere will not appreciably give further notice than the very effective methods proposed by Plaintiff, and will save Plaintiff about $125 for a trip by a process server. Plaintiff respectfully urges the Court to issue the appropriate, proposed order.

Plaintiff relies on this Ex-Parte Petition, because his disability prevents him from taking more than a full day to venture from the Palm Desert area to downtown Los Angeles, about 125 difficult miles each way, for a rather simple and straightforward, likely perfunctory, hearing.

DATE:  June 29, 2025

*//Gary S. Hann*